MARY A. WALKER *vs.* LANCASHIRE INSURANCE COMPANY.

Bristol.    November 14, 1904. — September 6, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Insurance, Fire,* Sworn statement of loss.    *Interest.    Exceptions.*

In an action on a fire insurance policy, where the defence set up was the alleged failure of the plaintiff forthwith to render to the company a sworn statement of loss as required by the policy, it appeared, that the property insured consisted of household goods and furniture, that the fire occurred on November 26, that the company received notice of it within forty-eight hours and sent an adjuster with authority to adjust the loss, that the adjuster wrote to the plaintiff on December 7, asking for a written statement of loss, that between December 7 and December 19 an inquest was held by the fire marshal which was attended both by the plaintiff and the adjuster, that on December 19 the plaintiff signed and made oath to a written statement of loss in the form and with the particulars required by the policy, and delivered it to the defendant's agent who had issued the policy to the plaintiff, and who had no authority to adjust losses but had authority to receive proofs of loss for the purpose of forwarding them to the defendant, that with the consent of this agent the written statement immediately thereafter was taken away by the plaintiff for the purpose of making a copy of it, that the plaintiff returned the statement to the agent on February 23, no request appearing to have been made for it in the meantime, and thereupon it was sent to the defendant, which received it on March 15 and retained it without objection, and that more than a month afterwards the receipt of the statement of loss was acknowledged by the adjuster without making any objection to it. The

judge hearing the case without a jury found that the defendant had waived a strict compliance with the condition of the policy, and found for the plaintiff. *Held*, that, taking all the circumstances into account, the court could not say that the finding of the judge that the defendant had waived a strict compliance with the condition was not warranted, and that what took place on December 19, when the plaintiff delivered the statement to the agent, could be found to have been a good delivery of the statement of loss to the defendant.

Where the defendant in an action of contract has been summoned as trustee of the plaintiff in an action previously brought against the plaintiff and still pending, the plaintiff, if he prevails, is not entitled to interest from the date of his writ but only to the date of the service of the trustee process on the defendant.

Where exceptions of the defendant in an action of contract, otherwise overruled, are sustained on the ground that interest has been allowed from the date of the writ when it should have been allowed only to a previous date when the defendant was summoned as trustee of the plaintiff in another action still pending, the court may make an order that the exceptions shall be overruled if the plaintiff remits the amount of excessive interest, or otherwise shall be sustained.

MORTON, J.  This is an action of contract on a policy of fire insurance to recover for a total loss by fire of the property covered by the policy which consisted of household goods and furniture contained in " the frame building formerly occupied as a private barn, owned by Francis Bump, situate on the west side of Broadway in the village of North Raynham, Mass." The case was sent to an auditor and was heard by a judge of the Superior Court without a jury upon his report, it being agreed that certain facts found by him should be taken to be true so far as competent and material.  Certain other facts also were agreed.  The judge found for the plaintiff, and the case is here on exceptions by the defendant to the finding and to the refusal of the judge to give certain rulings that were requested.

The policy provides amongst other things that, " In case of any loss or damage under this policy a statement in writing, signed and sworn to by the insured, shall be forthwith rendered to the company, setting forth the value of the property insured, the interest of the insured therein, all other insurance thereon, in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time at which and the manner in which the fire origi-nated, so far as known to the insured."  The fire occurred on November 26, 1899, and the statement was rendered according to the plaintiff's contention on December 19, and according to the defendant's contention not till March 15.  The defendant further

contends that even if the statement is regarded as having been rendered on December 19, that was not forthwith within the meaning of the policy, and that there was no waiver by it of the requirement that it should be so rendered. This is the principal question in the case. There is also a question of interest : — the defendant having been trusteed and contending that it is. not chargeable with interest, but the court having allowed interest from the date of the writ.

The policy was issued at Taunton through the agency of Hammond, Morse and Company, who had authority to receive applications, take risks, countersign and issue policies and receive the premiums therefor. It bore the lithographed signature of the " Manager of the Eastern Department" and was countersigned " at Taunton " by " Hammond, Morse & Co., Agents." The latter received the application, accepted the risk, took the premium, and as already stated issued the policy to the plaintiff. It is agreed that Hammond, Morse and Company had no authority to adjust losses, but had authority to receive proofs of loss for the purpose of forwarding them to the company. The company received notice of the fire within forty-eight hours through its local agents and immediately sent out its adjuster with authority to adjust the loss. He called on the plaintiff and interviewed her about the fire and subsequently on December 7 wrote her as follows : " I have to advise you that if you consider that you have a valid claim against the Lancashire Ins. Co. by reason of recent fire destroying certain furniture belonging to you in No. Raynham, you will kindly forward the written statement called for by the statutes and the policy." This was duly received by her, and certainly affords ground for the contention that it operated as a waiver of any delay that might have already occurred. Whether it constituted a waiver as matter of law it is not necessary to consider. Between the 7th and 19th of December a fire inquest was held by the marshal which was attended both by the plaintiff and the adjuster. What communications, if any, there were between the plaintiff and the adjuster during this interval does not appear. But it would be extraordinary if the subject of the loss was not referred to, and it is possible that facts brought out at the inquest may have seemed to the adjuster to render a proof

of loss of minor consequence. On December 19, the plaintiff signed and made oath to a written statement of her loss in the form and with the particulars required by the policy, and on the same day it was delivered by her counsel to Hammond, Morse and Company and with their consent immediately taken away by him in order that he might make a copy of it. He returned it on February 23, no request appearing to have been made for it in the meantime, and it was thereafterwards sent to the defendant, the latter receiving it on March 15 and retaining it without objection. Neither was any objection made by the adjuster who acknowledged the receipt of it in a letter written more than a month afterwards. This, and the conduct of the company, are only material as tending to throw light upon and explain previous conduct. It is to be noticed that the property insured consisted of household goods and furniture. The auditor found, if not concluded by the referee's award, that the plaintiff's loss was $2,000, showing that there was a large quantity of furniture. And it well might be that in view of the inquest and the nature of the property, the time that elapsed from December 7, when the adjuster wrote to the plaintiff calling her attention to the matter of the proof of loss, to December 19, when it was given to Hammond, Morse and Company, was not unreasonable.

Taking all of the circumstances into account we do not see how it can be said that the presiding judge was not warranted in finding that the defendant had waived strict compliance with the condition, and that, assuming that what took place constituted a valid delivery, the giving of the proof of loss to Hammond, Morse and Company on December 19 was a performance of the condition. *Eastern Railroad* v. *Relief Ins. Co.* 105 Mass. 570. *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263. *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382. *Mandell* v. *Fidelity & Casualty Co.* 170 Mass. 173. It is plain, however, that if the proof of loss was not delivered till March 15 when it was received by the defendant company the condition was not performed. And the defendant contends that what took place on December 19 did not amount to a delivery of the proof of loss to Hammond, Morse and Company. It bases this contention on the fact, which is agreed, that Hammond, Morse and Company had apparent authority to receive proofs of loss for the

purpose of forwarding them to the company, and had no author-
ity to adjust losses.  We construe this to mean that they had
no authority to adjust losses but did apparently have authority
to receive proofs of loss.  Whether their authority was strictly
limited as between themselves and the company to the mere
function of receiving and forwarding proofs of loss is, it seems
to us, immaterial.  There is nothing to show that any such limi-
tation on their apparent authority was known to the plaintiff and
she cannot, therefore, be affected thereby.  *Markey* v. *Mutual
Benefit Ins. Co.* 103 Mass. 78.  *Harnden* v. *Milwaukee Mechanics'
Ins. Co.* 164 Mass. 382.  *Parker & Young Manuf. Co.* v. *Exchange
Ins. Co.* 166 Mass. 484.

If the proof of loss had been delivered to the defendant com-
pany and then immediately taken away with the defendant's
consent by the plaintiff or her counsel for the purpose of making
a copy of it, there can be no question, we think, that there
would have been a good and sufficient delivery of the proof of
loss.  And we think that it was within the apparent scope of
the authority of Hammond, Morse and Company to allow the
same thing to be done.  There is no finding that the proof of
loss was not delivered and borrowed in good faith, or that there
was any intention in what was done to evade the conditions of
the policy.  The finding of the judge in favor of the plaintiff
must be taken to negative anything of the kind.  The fact that
the proof of loss was retained so long a time cannot in the
absence of any finding of a want of good faith invalidate the
transaction.  We think that what took place could be found to
constitute a good delivery of the proof of loss.

The remaining question relates to the matter of interest.
The defendant was summoned as trustee of the plaintiff in an
action against her by C. E. Osgood and Company.  That action
was brought before this and is still pending.  Referees were
appointed under the policy and made an award in favor of the
plaintiff before this action was brought.  The defendant con-
tended that if liable at all it was only liable for the amount of
the award, and also asked the judge to rule that if entitled to
recover the plaintiff was not entitled to interest.  The judge
found for the plaintiff for the amount of the award with interest
from the date of the writ.  We think that the allowance of

interest was erroneous.   "It is well settled that, when one summoned as trustee is indebted to the principal defendant upon a demand where interest would be recoverable by the principal defendant only as damages for breach of contract, interest will not be deemed to accrue during the pendency of the trustee process."   *Smith* v. *Flanders,* 129 Mass. 322.   *Huntress* v. *Burbank,* 111 Mass. 213.   *Bickford* v. *Rich,* 105 Mass. 340.   *Oriental Bank* v. *Tremont Ins. Co.* 4 Met. 1.   The exceptions are sustained on this point only.   But as the amount of interest thus allowed is easily computed, if the plaintiff will remit that amount when ascertained the exceptions may be overruled ; otherwise, they will be sustained.

*Ordered accordingly.*

The case was submitted on briefs at the sitting of the court in November, 1904, and afterwards was submitted on briefs to all the justices.

*F. W. Brown,* for the plaintiff.

*A. Fuller & W. J. Davison,* for the defendant.